UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
RCB EQUITIES #3, LLC,

                      Plaintiff,                          REPORT AND
                                                       RECOMMENDATION
    -against-                                   11 CV 1004 (KAM)(RML)

ALMA BUILDING, LLC, FRED BOGORAZ,
and DAVID GOLUB,

                      Defendants.
----------------------------------------------------------X

LEVY, United States Magistrate Judge:

        By order dated August 1, 2011, the Honorable Kiyo A. Matsumoto, United States District Judge, referred plaintiff's motion for a default judgment to me to conduct a damages inquest and issue a report and recommendation. On January 27, 2012, I ordered plaintiff to file a supplemental submission, which it did on February 10, 2012. For the reasons stated below, I respectfully recommend that plaintiff's motion be granted with respect to its first and fifth claims and that its remaining three claims be dismissed. In addition, I recommend that the court order the foreclosure and sale of the Property pursuant to the terms in plaintiff's proposed order and enter judgment against defendants in the amount of $727,608.36.

**BACKGROUND AND FACTS**

        On March 2, 2011, Greystone Bank ("Greystone") commenced this action against defendants Alma Building, LLC ("Alma"), Fred Bogoraz ("Bogoraz"), and David Golub ("Golub") (collectively, "defendants"). Greystone brought the action in order to foreclose on a first mortgage lien on certain real property located at 95-01 103rd Avenue in Queens, New York (the "Property"). Following its acquisition of the note and mortgage at issue in this action, RCB Equities #3, LLC ("plaintiff" or "RCB"), moved to be substituted for Greystone as plaintiff in the action. On July

15, 2011, Judge Matsumoto granted that motion.[1] (Order, dated July 15, 2011.)

As defendants had failed to interpose an answer or otherwise respond to the complaint, on August 1, 2011, plaintiff moved for an entry of default. On August 5, 2011, the Clerk's Office entered a notation of default against all three defendants. (See Clerk's Entry of Default, dated Aug. 5, 2011.) Plaintiff presently moves for a default judgment. Defendants have not responded to plaintiff's application.

It is well-settled that, upon default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). The facts, as outlined by Greystone in the complaint, are as follows:

On or about December 13, 2007, defendants duly executed and delivered to Greystone a mortgage note (the "Note"). (Complaint, dated Mar. 2, 2011 ("Compl."), ¶ 9.) Pursuant to the Note, defendants promised to pay Greystone $665,000, with interest, in installments of principal and interest. (Id.) In addition, defendants, as mortgagors, executed and delivered to Greystone, as mortgagee, a first mortgage lien on the Property in the principal amount of $665,000, and established a mortgage dated December 13, 2007 (the "Mortgage"). (Id. ¶ 10.) On April 4, 2008, the Mortgage was duly recorded in the Office of the City Register of the City of New York. (Id.)

Pursuant to the Note, defendants were to pay monthly installments on the first day of each month beginning February 1, 2008, initially in the amount of $4,148.73. (Id. ¶¶ 10, 13, 14 & Ex. 1 (the "Note") § ii(A),(B).) The Mortgage provides that the failure to make such payments

---

[1] On September 23, 2011, Judge Matsumoto also granted plaintiff's motion to appoint a receiver in foreclosure. (Order, dated Sept. 23, 2011.)

is an event triggering default (id. ¶ 19 & Ex. 2 ("the Mortgage") § 33(a)), and both the Mortgage and the Note state that the loan shall be accelerated (and the whole of the principal and interest due immediately) in the event of a default (Compl. ¶ 16; Note § 6; Mortgage § 33).

Defendants failed to make monthly mortgage payments during the period between December 2009 and May 2010. (See Compl. ¶¶ 24–27.) Although Greystone reinstated the loan after a payment in May 2010 (id. ¶ 28), defendants once again failed to make timely payments due after July 1, 2010 (id. ¶ 29). As a result, on November 4, 2010, Greystone filed an action, Greystone Bank v. Alma Building, LLC, 10 CV 5105, in this district. (Id. ¶ 30.) However, because defendants made a partial payment in November 2010, Greystone again reinstated the loan and voluntarily dismissed the lawsuit without prejudice in February 2011. (Id. ¶ 31.)

However, defendants did not make the monthly payment that was due on December 1, 2010 and have failed to make any payments since then. (Id. ¶ 32.) After notifying defendants of the default in February 2011, Greystone accelerated the loan (id. ¶ 33) and commenced the present action. On April 28, 2011, Greystone and plaintiff entered into a mortgage loan sale agreement for the purchase of the Note and Mortgage and Greystone assigned the Mortgage to plaintiff. (See Declaration of Alix Pierre, dated Aug. 1, 2011 ("Pierre Decl."), ¶ 6; see also Assignment of Mortgage, dated Apr. 28, 2011, and annexed as Ex. 1 to the Declaration of Alix Pierre, dated July 13, 2011.)

Plaintiff currently moves for a default judgment, and the relief it seeks includes, in pertinent part: (1) foreclosure and sale of the Property;[2] (2) a deficiency judgment against defendants; (3) $22,060.35 in attorney's fees; and (4) $2,284.41 in costs.

---

[2] Plaintiff makes specific requests with respect to the administration of the sale of the Property in its Proposed Judgment.

## DISCUSSION

Rule 55 of the Federal Rules of Civil Procedure governs the issuance of default judgments and permits the court to enter a judgment against a defendant who fails to defend an action brought against it. However, because the issuance of a default judgment is considered an "extreme measure[]," Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 90 (2d Cir. 1993), certain procedural prerequisites must be satisfied. Before moving for a default judgment under Fed. R. Civ. P. 55(b), a plaintiff must first secure "an entry of default" from the Clerk of the Court under Rule 55(a). Once this prerequisite has been met, the decision to grant a motion for a default judgment lies in the sound discretion of the trial court. See Diakuhara, 10 F.3d at 95. In cases where a defendant has neither answered nor appeared in the case, "the Court must first determine whether service of process has been properly effectuated upon the defaulting defendant and, if so, whether the unchallenged facts alleged in the complaint state a legitimate cause of action." Ningbo Home Expo Co. v. Life Sys. Imports, Inc., No. 08-CV-2066, 2010 WL 1459354, at *1 (E.D.N.Y. Feb. 16, 2010) (citations omitted).

### A. Service and Entry of Default

In this case, plaintiff has demonstrated that defendants were properly served with the Summons and Complaint (see Affidavit of Service on Fred Bogoraz, sworn to Mar. 23, 2011; Affidavit of Service on Alma Building LLC, sworn to Mar. 15, 2011; Affidavit of Service on David Golub, sworn to Mar. 24, 2011; see also Declaration of Alicia Pitts, Esq., dated Aug. 1, 2011 ("Pitts Decl."), ¶ 8),[3] and a Clerk's Entry of Default confirms that defendants have not filed an answer or otherwise moved with respect to the complaint, and that the time to do so has expired.

---

[3] On July 19, 2011, plaintiff served defendants with additional copies of the summons, complaint, and notice of pendency along with its motion to appoint a receiver. (Pitts Decl. ¶ 8.)

(Clerk's Entry of Default, dated Aug. 5, 2011.)

      B. Liability

Even after properly serving a defendant and securing an entry of default, a plaintiff seeking a default judgment must set forth facts sufficient to state a legitimate cause of action. See, e.g., Chanel, Inc. v. Schwartz, No. 06-CV-3371, 2007 WL 4180615, at *3 (E.D.N.Y. Nov. 19, 2007). As a threshold matter, as plaintiff has withdrawn its second through fourth causes of action (Supplemental Declaration of Rachel Kramer, dated Feb. 10, 2012, ¶ 2), I recommend that these claims be dismissed. Next, I will address whether plaintiff has set forth facts sufficient to state legitimate claims with respect to its first and fifth causes of action (foreclosure of the Property and judgment against defendants personally).

      1. Foreclosure of the Property

"Under New York law, a plaintiff is entitled to foreclosure 'as a matter of law through the production of the mortgage, the unpaid note, and evidence of default.'" BH99 Realty, LLC v. Qian Wen Li, No. 10–CV–0693, 2011 WL 1841530, at *3 (E.D.N.Y. Mar. 16, 2011) (citations omitted), adopted, 2011 WL 1838568 (E.D.N.Y. May 13, 2011). Here, plaintiff has produced copies of the Mortgage and the Note (see Compl., Exs. 1 & 2) and established the obligations of defendants under them. In addition, pursuant to defendants' default in this action, Greystone's well-pleaded allegations with respect to defendants' default by failing to make payments have been deemed admitted. As plaintiff adequately alleged its claim for foreclosure, it is entitled to the relief it seeks on its first cause of action, namely, foreclosure and sale of the Property. I therefore respectfully recommend that the court enter an order affording such relief in the form plaintiff has submitted in its proposed order.

      2. Deficiency Judgment

Pursuant to its fifth cause of action, plaintiff also seeks a deficiency judgment against defendants. Specifically, plaintiff seeks "payment of all amounts due under the Mortgage and Note that are not satisfied by the proceeds of the foreclosure sale . . . ." (Pierre Decl. ¶ 25.) According to plaintiff, "[b]y virtue of [defendants'] default under the Mortgage, Alma Building LLC, Fred Bogoraz and David Golub are personally liable . . . for the payment of all amounts due under the Mortgage and Note, including interest, attorneys' fees, [and] costs . . . ." (Compl. ¶ 55.) The Mortgage provides that

> [t]he obligation of this Mortgage and of the Note shall continue until the Debt is paid in full notwithstanding any action or actions of partial foreclosure which may be brought to recover any amount or amounts for installments of principal, interest, taxes, assessments, water rates or insurance premiums or other sums or charges due and payable under the provisions of this Mortgage.

(Mortgage § 43.) Thus, Greystone adequately pleaded (and defendants' default therefore establishes) that defendants are liable for all amounts due under the Mortgage and Note. I therefore respectfully recommend that the court find defendants liable on the complaint's fifth cause of action and award the deficiency judgment that plaintiff seeks.

### C. Amount Due under the Mortgage and Note

Upon a finding of liability, the court must conduct an inquiry sufficient to establish damages to a "reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). An evidentiary hearing is not required so long as there is a basis for the damages awarded. Transatl. Marine Claims Agency, 109 F.3d at 111. Here, documentary

evidence, including Greystone Servicing's[4] foreclosure record and two declarations by Alix Pierre, a special asset officer for Greystone, provide a basis for establishing the amount that defendants owe plaintiff.  See Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991); Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989) ("[T]he court may rely on detailed affidavits or documentary evidence . . . to evaluate the proposed sum).

In this case, plaintiff seeks: (1) unpaid principal; (2) regular interest; (3) default interest; (4) repayment of escrow advances; (5) late charges; (6) broker opinion report fees; (7) attorney's fees; and (8) costs.  I will discuss plaintiff's entitlement to each of these items in turn.

1. Unpaid Principal

First, plaintiff seeks the current unpaid principal balance of $642,114.74.  (Pierre Decl. ¶ 21, Ex. B.)  As plaintiff has adequately demonstrated through its Statement of Damages and Greystone Servicing's foreclosure record that this is the amount of unpaid principal, I respectfully recommend that the court award it the full unpaid balance of $642,114.74.

2. Regular Interest

Second, plaintiff requests $26,994.17 in regular interest for the period of December 1, 2010 through January 31, 2012.  (See Supplemental Declaration of Alix Pierre, dated Feb. 10, 2012 ("Supp. Pierre Decl."), ¶ 15.)  Plaintiff calculated this amount by taking the outstanding principal due on the loan as of December 1, 2010 ($642,144.74) and multiplying it by the applicable interest rate.[5]  (See id. ¶¶ 11–15.)  The Note provides for a yearly interest rate on the

---

[4] Greystone Servicing services "the loan pursuant to a special servicing agreement, dated April 28, 2011 . . . ."  (Pierre Decl. ¶ 1.)

[5] Plaintiff also subtracted $1,910.00 from the total to account for a partial payment of interest for the month of December 2010.  (Supp. Pierre Decl. ¶ 15.)

unpaid principal balance of 6.375 percent until January 1, 2011, and a variable rate thereafter.[6]
(Note §§ i, iii.) Although the court calculates the total interest to be $28,991.77, as plaintiff only requests $26,994.17, I respectfully recommend that plaintiff be awarded $26,994.17 in regular interest. I also recommend that regular interest continue to accrue at a daily rate of $65.97 from February 1, 2012 until the date of entry of judgment.

        3. Default Interest

Third, plaintiff seeks $45,531.66 in default interest. The Note provides that after the "stated or accelerated maturity" of the loan, a default interest rate shall apply. (Note § 11.) The default interest rate is defined in the Mortgage as "equal to 5.0% per annum in excess of the interest rate then in effect with respect to the loan . . . ." (Mortgage § 8.2.) The default interest that plaintiff seeks represents five percent of the then-outstanding principal for the months of August 2010 through January 2012. (See Supp. Pierre Decl. ¶¶ 7–10.) While the court has reviewed and is satisfied with plaintiff's calculations of these amounts,[7] by the terms of the Note, the default interest rate only applies after the accelerated maturity of the loan. During the period between the reinstatement of defendants' loan in November 2010 and the second acceleration of the loan in February 2011, this condition was seemingly not met. As plaintiff has thus not demonstrated its entitlement to default interest during that time, I recommend that its request for default interest for the period of December 2010 through February 2011 be denied. By the court's calculation, plaintiff is entitled to $40,180.69 in default interest for the months of August 2010 through

---

[6] According to the Note, the variable yearly rate was to be the greater of 3.75% or the one-year London Interbank Offered Rate plus 2.625%. (See Note § iii.)

[7] Plaintiff calculates default interest as $2,687.61 for each of the months of August 2010 through November 2010, $32,105.74 for the period of December 2010 through December 2011, and $2,675.48 for the month of January 2012. (See Supp. Pierre Decl. ¶ 10.)

November 2010 and March 2011 through January 2011. In addition to this amount, I recommend that default interest continue to accrue at a daily rate of $87.96 from February 1, 2012 until the date of entry of judgment.

### 4. Advance for Property Taxes

Fourth, plaintiff seeks $6,440.83 to reimburse it for escrow advances used to pay property taxes.[8] Plaintiff is entitled to these fees pursuant to the Mortgage (see Mortgage § 8.1), and it establishes that these costs were incurred and paid.[9] (See Supp. Pierre Decl. ¶ 25, Ex. 5.) I therefore respectfully recommend that the court award $6,440.83 to cover the payments for property taxes.

### 5. Late Charges

Fifth, plaintiff seeks $572.24 in late charges. The Note states that "[i]n the event that any payment shall become overdue for a period of **15** days, a late charge of $0.05 per $1.00 due of the total monthly payment of principal, interest and escrow so overdue may be charged by the lender . . . ." (Note § 1 (emphasis in original).) Plaintiff seeks late charges for the months following default but prior to the acceleration of the loan (December 2010, January 2011, and February 2011). (See Supp. Pierre Dec. ¶¶ 18–20.) Plaintiff has demonstrated that the monthly payments due during those months were not paid and that it is owed $207.44 per month for

---

[8] In its initial default submission, plaintiff sought $2,169.38 in escrow advances. However, in its supplemental submission, plaintiff requests $6,440.83, reflecting not only escrow advances but also taxes paid in December 2011 and January 2012. (See Supp. Pierre Decl. ¶ 23.)

[9] Alix Pierre, a special asset officer for Greystone, states that the three payments that Greystone made were $2,169.38, $2,102.07, and $2,129.38. (See Supp. Pierce Decl. ¶ 25.) These sums total $6,400.83. However, the business records that plaintiff annexed to Pierre's declaration demonstrate that the third payment was actually $2,169.38. As a result, in conducting its own calculations of the total due for property tax advances, the court used the values in the records, which support plaintiff's request for $6,440.83.

December 2010 and January 2011 (five percent of $4,148.73 monthly payment) and $157.36 for February 2011 (after the monthly interest rate declined). (See Supp. Pierre Decl. ¶ 19, Ex. 2; see also Note § (ii)(B) (setting initial payments at $4,148.73).) I therefore recommend that plaintiff be awarded a total of $572.24 in late fees.

      6. Broker Opinion Report and NSF Funds Fee

Sixth, plaintiff seeks $196.64 reflecting the unpaid portion of a broker price opinion report that was conducted on the Property, as well as $25.00 in non-sufficient-funds ("NSF") fees it charged defendants in connection with an unsuccessful debit of their account.[10] Plaintiff establishes that the broker opinion price report was conducted and invoiced in 2010 and that $196.64 is still owed for it. (See Supp. Pierre Decl. ¶ 22, Ex. 4.) However, plaintiff has not even specified when the $25.00 NSF fees were charged (i.e. when the debit was unsuccessful), let alone demonstrated evidence of such a charge. I therefore recommend that the court award $196.64 to cover unpaid report fees but deny plaintiff's request for $25.00 in NSF fees.

      7. Attorney's Fees

Next, plaintiff seeks $22,060.35 in attorney's fees for 70.5 hours of work. (Pitts Decl. ¶ 12, Ex. B; Motion to Amend/Correct/Supplement Motion for Default Judgment, dated Aug. 31, 2011 ("Pl.'s Supplemental Submission"), Ex. B.) Under the terms of both the Mortgage and the Note, it is entitled to recover "reasonable" attorney's fees. (See Mortgage § 10(c); Note § 12.)

In calculating a "reasonable" fee award, the court must first establish a reasonable hourly rate, which is "the rate a paying client would be willing to pay." Arbor Hill Concerned

---

[10] In its initial submission, plaintiff sought $500.00 in reimbursement for the broker price opinion report and $221.94 for "other report fees." However, the original submission "erroneously listed" these amounts. (Supp. Pierre Decl. ¶ 22.)

Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 112 (2d Cir. 2007). "A district court's choice of rates is well within its discretion." Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 206 (E.D.N.Y. 2007) (internal quotations and punctuation omitted); see also Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994). Reasonable hourly rates are determined by reference to fees in the community in which the action is pending and to the skill and experience of the attorneys who worked on the matter. Luciano v. Olsten Corp., 109 F.3d 111, 115–16 (2d Cir. 1997); Cho, 524 F. Supp. 2d at 206. The party seeking fees then bears the burden of establishing that the number of hours for which it seeks compensation is reasonable. Cruz, 34 F.3d at 1160 (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).

Here, plaintiff has submitted contemporaneous time records[11] (see Pitts Decl., Ex. B; Pl.'s Supplemental Submission, Ex. B) and a declaration of its counsel (see Pitts Decl.) in support of its request for $22,060.35. Plaintiff bases its request on the following hourly rates: $702.00 for Barry G. Felder, a partner; $301.50 for Alicia L. Pitts, an associate; $459.00 or $414.00 for Rachel E. Kramer, an associate; $211.50 for Raymond Giraud, a paralegal; $202.50 for Alison Holdway, Joshua L. Mobil, Hannah C. Waite, and Tana Stringfellow, all paralegals; and $180.00 for Sara L. McGraw, a paralegal.[12] Pitts avers without accompanying support that "[t]he amounts billed by [her firm] are reasonable and are well within the hourly rates charged by other law firms of comparable size in New York City." (Pitts Decl. ¶ 16.) However, the relevant

---

[11] In the Second Circuit, applications for attorney's fees must be supported by contemporaneous time records specifying relevant dates, time spent, and work done. N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147–48 (2d Cir. 1983).

[12] Plaintiff's counsel does not specify Giraud's, Mobil's, or Waite's positions but based on the rate at which the firm bills their work relative to its other staff members, the court presumes that all three are paralegals.

geographical area for comparative rates is not all of New York City but this district, see Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997), and a deduction of the hourly rates is warranted because plaintiff has provided absolutely no information concerning the credentials or experience of counsel, see Molefi v. Oppenheimer Trust, No. 03 CV 5631, 2007 WL 538547, at *6 (E.D.N.Y. Nov. 17, 2007) (reducing rate where no information provided); Night Hawk Ltd. v. Briarpatch Ltd., No. 03 Civ. 1382, 2004 WL 1375558, at *4 (S.D.N.Y. June 17, 2004) ("[W]here no information is provided concerning the credentials or experience of counsel applying for fees, it is appropriate to reduce the amount of a fee award sought." (citations omitted)). Moreover, the amounts billed by plaintiff's counsel are well above those that courts in this district have approved in similar actions. See BH99 Realty, 2011 WL 1841530, at *7 (reducing hourly rates for the same counsel in a foreclosure action to $250 for a partner, $175 and $150 for associates, and $80 for paralegals); Kochisarli v. Tenoso, No. 02 Civ. 4320, 2008 WL 1882662, at *7 (E.D.N.Y. Apr. 24, 2008) ("[F]or actions in this District involving mortgages and promissory notes attorneys' fees have been approved in the range of $150 to $175 (for senior associates) and $200 to $250 for partners." (citation omitted)).

The next question is whether the 70.5 hours expended by plaintiff's counsel were reasonable in an action of this nature. "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). Pitts avers that her firm spent the 70.5 hours preparing and filing the following: the November 2010 action,[13] the present action, the

---

[13] As the Mortgage and Note both specify that defendants are responsible for paying for Greystone's attorney's fees and expenses in any action commenced to collect defendants' debt (see Mortgage § 10(c); Note § 12), it is appropriate to award plaintiff fees that it incurred during the first action.

motion for substitution of plaintiff, the motion to appoint a Receiver for the property, and this motion for default judgment. (See Pitts Decl. ¶ 13.) After review of counsel's time records, I find that the number of hours expended is slightly excessive given the straightforward nature of this action and the fact that all of those motions have been unopposed.[14] To account for plaintiff's unreasonably high fees and number of hours, I respectfully recommend that plaintiff's attorney's fee award be reduced by sixty percent and that plaintiff be awarded $8,824.14 in attorney's fees.

### 8. Costs

Finally, plaintiff seeks reimbursement of $2,284.41 in costs. Specifically, it seeks fees for the following: the filing of two actions and two Notices of Pendency,[15] several services of process, a title report on the Property, delivery and search charges, transportation to and from the courthouse, and photocopies. (See Pitts Decl., Ex. C; Pl.'s Supplemental Submission, Ex. B.) As the Note and Mortgage both provide for the reimbursement of such costs (see Mortgage § 10(c); Note § 12) and I find that plaintiff has adequately documented them, I respectfully recommend that the court award plaintiffs $2,284.41 in costs.

### CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiff's motion for a default judgment on its first and fifth causes of action be granted and that plaintiff's remaining three claims be dismissed. I also recommend that foreclosure and sale of the Property be ordered pursuant to the terms in plaintiff's proposed order and that judgment be awarded in the total

---

[14] In addition, counsel's repeated use of block-billing makes it impossible to assess the reasonableness of various entries.

[15] Because the Mortgage and Note both specify that defendants are responsible for paying for Greystone's expenses in any foreclosure action (see Mortgage § 10(c); Note § 12), it is appropriate to award plaintiff costs that it incurred during the first action.

amount of $727,608.36. Finally, I recommend that plaintiff be awarded pre-judgment interest from February 1, 2012 to the date of entry of judgment at a daily rate of $153.93.[16] Plaintiff's counsel is directed to serve copies of this Report and Recommendation on defendants. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Matsumoto and to my chambers, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
         February 22, 2012

---

[16] Plaintiff requests a daily total interest rate (including both regular and default interest) of $156.07. However, plaintiff erroneously calculated its daily interest rate using a 360-day rather than a 365-day year. (See Supp. Pierre Decl. ¶¶ 16, 17.)